```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

J&J SPORTS PRODUCTIONS, INC.    §
                                §
VS.                             §   CIVIL ACTION NO. 4:10-CV-294-Y
                                §
CHANCE CLUB CORPORATION, et al. §
```

                        ORDER GRANTING MOTION FOR
                        INTERLOCUTORY DEFAULT JUDGMENT

Before the Court is the Motion for Interlocutory Default Judgment (doc. 31) filed by plaintiff J&J Sports Productions, Inc. ("J&J"). By the motion, J&J seeks a default judgment on its claims against defendant Chance Club Corporation ("Chance") for alleged violations of the Federal Communications Act ("FCA"). After review, the Court will grant the motion.

I. Background

J&J markets and licenses commercial exhibitions of pay-per-view prizefight events. (App. 5.) One such event took place on May 5, 2007, featuring world-famous boxers Oscar De La Hoya and Floyd Mayweather Jr. ("the Event").[1] Pursuant to a licensing agreement with the Event's promoter, J&J was granted an exclusive license to exhibit and sublicense the video presentation of the Event at "closed-circuit" locations throughout the State of Texas, such as theaters and restaurants. (*Id.* at 5, 11-17.)

---

[1] The Event also included a number of preliminary fights known as "undercard bouts." (App. 5-6, 19.)

To safeguard against unauthorized video showings of the Event, its interstate satellite video transmission was electronically coded. (*Id.*) Authorized establishments were provided with the electronic-decoding equipment and satellite coordinates necessary to receive the video signal of the Event.[2] (*Id.*) Each establishment was also charged a sublicense fee roughly proportionate to the capacity of the establishment.[3] (*Id.* at 6.)

Despite these safeguards, Chance, doing business as "Monte Carlos," broadcast a video depiction of the Event at its establishment on May 5, even though it had not obtained a sublicense from J&J to do so. (*Id.* at 6, 19-21.) And according to J&J, Chance could not have broadcast the Event without making an intentional effort to intercept the satellite transmission.

J&J, therefore, filed the instant lawsuit on April 28, 2010, alleging violations of sections 553 and 605 of the FCA. See 47 U.S.C.A. §§ 553 and 605 (West 2011).[4] Chance was served with process on August 6, 2010, via personal service on its registered agent (doc. 4). After Chance failed to plead or otherwise defend, the clerk entered Chance's default on December 16, 2010, upon J&J's

---

[2] To be precise, for certain authorized establishments, J&J simply contacted the establishments' satellite providers, rather than providing decoding equipment. (App. 5-6.)

[3] The customary fee for receiving transmission of the Event was calculated by multiplying the relevant establishment's maximum-fire-code capacity by twenty (20). (App. 23.)

[4] Also named as defendants in this case were James Andrew Lloyd and Barbara Dale Lloyd. But because neither of these defendants is in default, J&J is not seeking judgment against them by the instant motion.

request (doc. 13). That same day, however, counsel appeared for Chance and filed an unopposed motion for leave to file an answer (doc. 12). The Court granted the motion and set aside the clerk's December 16 entry of default (docs. 14, 15). Chance then filed an answer on December 28 (doc. 16).

But on January 24, 2011, the Court entered an order granting Chance's attorney leave to withdraw as counsel of record (doc. 20). In that order, the Court informed Chance that it could not proceed in federal court without an attorney and gave Chance fourteen (14) days to obtain replacement counsel. *See Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004). The Court warned Chance that failure to obtain counsel would result in entry of default against it.

After Chance failed to meet that deadline, the Court entered a show-cause order (doc. 21) and gave Chance additional time to obtain replacement counsel. The Court once again warned Chance that failure to obtain counsel would result in entry of default against it. Nevertheless, Chance failed to obtain counsel, prompting the Court to enter an Order to Obtain New Counsel (doc. 23). In that order, the Court gave Chance its final extension of time to obtain counsel and its third warning concerning default.

Despite these admonitions, Chance never obtained counsel. Consequently, the Court entered an Order for Entry of Default (doc. 25) on April 5, 2011, and the clerk entered Chance's default that

same day.  In light of those events, J&J now seeks an interlocutory default judgment on its claims against Chance.[5]

II. Discussion

A. Default-Judgment Standard

Securing a default judgment under Federal Rule of Civil Procedure 55 is a three-step process.  *See* Fed. R. Civ. P. 55; *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  First, the movant must establish the adverse party's default by showing that the adverse party has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a); *N.Y. Life Ins.*, 84 F.3d at 141.  Second, upon such a showing, the clerk must enter the adverse party's default.  *See*  Fed. R. Civ. P. 55(a); *N.Y. Life Ins.*, 84 F.3d at 141.  And finally, once default has been entered, the movant may apply for a judgment based on the adverse party's default.  *See* Fed. R. Civ. P. 55(b); *N.Y. Life Ins.*, 84 F.3d at 141.

In evaluating the merits of a motion for default judgment, the Court treats the well-pleaded facts in the movant's complaint as true.  *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact").

---

[5]  The default judgment that J&J seeks is interlocutory because, if granted, it will not dispose of the entire case.  There are two individual defendants whose defenses will not be adjudicated by the instant order.  *See supra* note 4.

4

Those allegations, along with any additional evidence presented by the movant, must be sufficient to support the requested judgment. *See id.* ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").

B. Analysis

The record establishes that Chance is in default and that the clerk has entered that default in accordance with Rule 55(a). *See* Fed. R. Civ. P. 55(a). Thus, the inquiry before the Court is whether J&J's well-pleaded allegations and supporting evidence are sufficient to support the requested judgment. J&J's complaint asserts claims against Chance under sections 553 and 605 of the FCA.

"Section 553(a)(1) [of the FCA] provides that 'no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so.'" *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting 47 U.S.C.A. § 553(a)(1) (West 2011)). Similarly, section 605 of the FCA states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C.A. § 605(a). "In addition, section 605 prohibits anyone

unlawfully receiving such communications from divulging or publishing the information or transmission. Both sections contemplate civil (and criminal) enforcement measures." *Prostar*, 239 F.3d at 673 (citing 47 U.S.C.A. §§ 553(b)-(c); 605(a),(e)).

J&J's well-pleaded allegations, along with the affidavits and other evidence submitted by J&J in support of the instant motion, establish that Chance unlawfully intercepted the video transmission of the Event. While J&J has not presented direct evidence that J&J intercepted the transmission, "[c]ircumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005) (footnote omitted). The record indicates that Chance exhibited the video presentation of the Event at its establishment, Monte Carlos, and that it did so without first obtaining authorization from J&J, the holder of the exclusive right to sublicense video transmission of the Event to Texas commercial venues.[6] (App. 5-6, 11-17, 19-21.) This is sufficient to support a finding of liability under sections 553 and 605.

Moreover, it is evident that Chance's interception of the Event's video transmission was willful and for purposes of commercial advantage and private gain. As one court noted, "[s]ignals do not descramble spontaneously, nor do television sets

---

[6] According to the affidavit of investigator Guy C. Connelly IV (incorporated into the affidavit of Thomas P. Riley as Exhibit B), Connelly observed Chance show the undercard bout between boxers Rey Bautista and Sergio Medina to approximately thirty (30) patrons. (Ex. B., App. 19-20.)

6

connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 438, 442 (S.D.N.Y. 1999). And "[w]hile [Chance] may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of [Chance] that such interception could not be had for free." *Kingvision Pay-Per-View, Ltd. v. Valles*, No. EP-00-CA-179-DB, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001).

In view of these findings, the Court concludes that J&J is entitled to the two types of damages set out in 47 U.S.C.A. § 605(e)(3)(C). With regard to the first type, § 605(e)(3)(C)(i)(II) provides for statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C.A. § 605(e)(3)(C)(i)(II). In addition, § 605(e)(3)(C)(ii) allows the Court to increase the damages award "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."[7] 47 U.S.C.A. § 605(e)(3)(C)(ii). J&J seeks $10,000 in statutory damages and $50,000 in additional damages. After review of J&J's documentary evidence and the affidavit of

---

[7] "The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services. To that end, Congress articulated a variety of penalties and remedies to protect the . . . television cable companies from unauthorized reception of their transmissions." *Prostar*, 239 F.3d at 673 (footnotes omitted) (internal quotation marks omitted).

7

Thomas P. Riley, the Court concludes that these sums are reasonable and should be awarded.[8] *See J&J Sports Prods., Inc. v. Gomez*, No. H-10-871, 2010 WL 3154829, at *2 (S.D. Tex. Aug. 9, 2010) (awarding $10,000 in statutory damages and $50,000 in additional damages in a case involving similar facts).

The Court also concludes that J&J is entitled to reasonable attorneys' fees. *See* 47 U.S.C.A. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). As J&J points out, this Court has considered it reasonable in anti-piracy cases to award attorneys' fees in the amount of one-third of the total damages recovery. *See, e.g*, *Entm't by J&J, Inc. v. Nuno*, No. 3:01-CV-0631-H, 2001 WL 896941, at *1 (N.D. Tex. Aug. 1, 2001) (Sanders, J.). Consistent with those cases, and after review of the affidavit of John W. Bowdich and the factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989), the Court concludes that J&J should recover attorneys' fees in the amount of one-third of the damages recovery in this case. Further, in the event that Chance files any

---

[8] J&J contends, and the Court agrees, that it would be difficult to determine the actual damages that J&J sustained as a result of Chance's unlawful exhibition of the Event. Whenever an unauthorized establishment exhibits a closed-circuit program, companies like J&J not only miss out on licensing fees, but also sustain more indirect forms of damages. This includes "los[ing] as customers legitimate commercial establishments[,] which are unwilling and financially unable to compete with those unauthorized commercial establishments." (App. 7.)

8

unsuccessful post-judgment motions or institutes any unsuccessful appellate proceedings that require additional legal work by J&J's counsel, J&J should recover fees for that work as well.

Finally, the Court concludes that J&J is entitled to injunctive relief. Pursuant to § 605(e)(3)(B)(i), the Court "may grant temporary and final injunctions on such terms as it may deem reasonable." 47 U.S.C.A. § 605(e)(3)(B)(i). In the Court's view, given Chance's actions in this case, it is appropriate to enjoin Chance from future unlawful interceptions of J&J's satellite transmissions.

III. Conclusion

Therefore, in view of the foregoing, the Court GRANTS J&J's motion for default judgment. Chance is hereby ENJOINED, absent prior authorization from J&J, from intercepting the transmission of any closed-circuit program with respect to which J&J possesses the rights to sublicense and exhibit. In addition, J&J shall recover $10,000 in statutory damages; $50,000 in additional damages for willful violations of § 605; and $20,000 in attorneys' fees. Post-judgment interest shall accrue on these amounts at a rate of .16% per annum. *See* 28 U.S.C.A. § 1961(a).

In addition, the Court enters this conditional award of attorneys' fees:

> (1) J&J shall recover an additional $10,000 in the event that Chance files any unsuccessful post-trial motions.

9

(2) J&J shall recover an additional $15,000 in the event that Chance files an unsuccessful appeal to the United States Court of Appeals for the Fifth Circuit.

(3) J&J shall recover an additional $5,000 in the event that Chance files a petition for writ of certiorari to the United States Supreme Court if the petition is denied or if the resultant proceedings do not lead to reversal of at least a portion of the judgment entered by this Court.

(4) J&J shall recover an additional $10,000 in the event that it files a petition for writ of certiorari to the United States Supreme Court if the writ is granted and if the subsequent proceedings result in the complete restoration of the judgment entered by this Court.

(5) J&J shall recover an additional $2,500 for the collection of the judgment entered in this case, should J&J obtain a writ of execution, writ of garnishment, writ of attachment, or other similar method of collection.

SIGNED July 20, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE