IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

J&J SPORTS PRODUCTIONS, INC.    §
                               §
VS.                            §    CIVIL ACTION NO. 4:10-CV-294-Y
                               §
CHANCE CLUB CORPORATION, et al. §

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (doc. 32) filed by plaintiff J&J Sports Productions, Inc. ("J&J").  By the motion, J&J seeks summary judgment on its claims against defendants James Andrew Lloyd and Barbara Dale Lloyd for alleged violations of the Federal Communications Act ("FCA").[1]  After review, the Court will grant the motion.


I.  Background

J&J markets and licenses commercial exhibitions of pay-per-view prizefight events.  (App. 6.)  One such event took place on May 5, 2007, featuring world-famous boxers Oscar De La Hoya and Floyd Mayweather Jr. ("the Event").[2]  Pursuant to a licensing agreement with the Event's promoter, J&J was granted an exclusive license to exhibit and sublicense the video presentation of the Event at "closed-circuit" locations throughout the state of Texas, such as theaters and restaurants.  (*Id.* at 6, 12-18.)

---

[1]  J&J has sued the Lloyds individually and doing business as "Monte Carlos."

[2]  The Event also included a number of preliminary fights known as "undercard bouts."  (App. 6-7, 20.)

To safeguard against unauthorized video showings of the Event, its interstate satellite video transmission was electronically coded. (*Id.* at 6.)  Authorized establishments were provided with the electronic-decoding equipment and satellite coordinates necessary to receive the video signal of the Event.[3] (*Id.* at 6-7.) Each establishment was also charged a sublicense fee roughly proportionate to the capacity of the establishment.[4] (*Id.* at 7.)

Despite these safeguards, the Lloyds, as officers and managers of Chance Club Corporation ("Chance"), broadcast a video depiction of the Event at "Monte Carlos," an establishment owned by Chance. (*Id.* at 7, 20-22.)  The Lloyds broadcast the Event even though Chance had not obtained a sublicense from J&J to do so.  (*Id.*) According to J&J, the Lloyds could not have broadcast the Event without making an intentional effort to intercept the satellite transmission.

J&J therefore filed the instant lawsuit on April 28, 2010, against Chance and the Lloyds, alleging violations of sections 553 and 605 of the FCA.  *See* 47 U.S.C.A. §§ 553 and 605 (West 2011). The Court granted J&J's motion for default judgment against Chance on July 20, 2011 (doc. 34), and entered judgment against Chance

---

[3] For certain authorized establishments, J&J simply contacted the establishments' satellite providers, rather than providing decoding equipment. (App. 6-7.)

[4] The customary fee for receiving transmission of the Event was calculated by multiplying the relevant establishment's maximum-fire-code capacity by twenty (20).  (App. 24.)

2

under Federal Rule of Civil Procedure 54(b) that same day (doc. 35).  By the instant motion, J&J seeks summary judgment on its claims against the Lloyds, whom J&J contends are jointly and severally liable with Chance.

II.  Discussion

   A.  Summary-Judgment Standard

   When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate.  Fed. R. Civ. P. 56(a).  "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

   To demonstrate that a particular fact cannot be genuinely in dispute, a plaintiff movant must cite to particular parts of materials in the record (e.g., affidavits), or show either that (1) the materials cited by the defendant do not establish the presence of a genuine dispute as to that fact, or (2) the defendant cannot produce admissible evidence to support that particular fact.  Fed. R. Civ. P. 56(c)(1).  Although the Court "need consider only the cited materials, . . . it may consider other materials in the

record." Fed. R. Civ. P. 56(c)(3).  In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted).

"When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if they show that the movant is entitled to judgment in his favor." *Jegart v. Roman Catholic Church of Diocese of Houma-Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010); *see also Probado Tech. Corp. v. SMARTnet, Inc.*, No. C-09-349, 2010 WL 4638902, at *3 (S.D. Tex. Nov. 8, 2010) ("If the non-movant fails to respond to the motion for summary judgment, the facts attested by movant's affidavits must be deemed true and established." (citation omitted) (internal quotation marks omitted)).  "Failure to respond to the summary judgment motion effectively waives the non-movant's opportunity to offer evidence or legal argument in opposition to summary judgment." *Probado*, 2010 WL 4638902, at *3 (quoting *Ervin v. Sprint Commc'ns Co.*, 364 F. App'x 114, 116 (5th Cir. 2010)).

But the Court "may not grant a motion for summary judgment merely because it is unopposed." *Id.; see also Hibernia Nat'l Bank*

*v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." (citation omitted)). "The movant still has the initial burden of establishing the absence of a genuine [dispute] of material fact." *Probado*, 2010 WL 4638902, at *3 (citing *Hibernia*, 776 F.2d at 1279). The Court must grant summary judgment only "if no reasonable juror could find for the non-movant." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

    B.  Analysis

    J&J asserts that the Lloyds are liable as a matter of law under sections 553 and 605 of the FCA. "Section 553(a)(1) [of the FCA] provides that 'no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so.'" *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting 47 U.S.C.A. § 553(a)(1) (West 2011)). Similarly, section 605 of the FCA states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C.A. § 605(a).

"In addition, section 605 prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission.   Both sections contemplate civil (and criminal) enforcement measures." *Prostar*, 239 F.3d at 673 (citing 47 U.S.C.A. §§ 553(b)-(c); 605(a),(e)).

The evidence that J&J has produced in support of its motion for summary judgment establishes that the Lloyds, as officers and managers for Chance, unlawfully intercepted the video transmission of the Event.  While J&J has not presented direct evidence that the Lloyds intercepted the transmission, "[c]ircumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005) (footnote omitted).   The record indicates that the Lloyds exhibited the video presentation of the Event at Monte Carlos and that they did so without first obtaining authorization from J&J, the holder of the exclusive right to sublicense video transmission of the Event to Texas commercial venues.[5] (App. 6-7, 12-18, 20-22.)   This is sufficient to support a finding of liability under sections 553 and 605.

Moreover, it is evident that the Lloyds' interception of the Event's video transmission was willful and for purposes of commercial advantage and private gain.   As one court noted,

---

[5]   According to the affidavit of investigator Guy C. Connelly IV (incorporated into the affidavit of Thomas P. Riley as Exhibit A-2), Connelly observed the Lloyds show the undercard bout between boxers Rey Bautista and Sergio Medina to approximately thirty (30) patrons. (Ex. A-2., App. 20-21.)

"[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 438, 442 (S.D.N.Y. 1999). And "[w]hile [the Lloyds] may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of [the Lloyds] that such interception could not be had for free." *Kingvision Pay-Per-View, Ltd. v. Valles*, No. EP-00-CA-179-DB, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001).

In view of these findings, the Court concludes, as it did in its July 20 default-judgment order, that J&J is entitled to the two types of damages set out in 47 U.S.C.A. § 605(e)(3)(C). With regard to the first type, § 605(e)(3)(C)(i)(II) provides for statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C.A. § 605(e)(3)(C)(i)(II). In addition, § 605(e)(3)(C)(ii) allows the Court to increase the damages award "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."[6] 47 U.S.C.A. § 605(e)(3)(C)(ii). J&J seeks

---

[6] "The legislative history associated with section 553 and the amendments to section 605 reveal that one of Congress's principal objectives was to discourage theft of cable services. To that end, Congress articulated a variety of penalties and remedies to protect the . . . television cable companies from unauthorized reception of their transmissions." *Prostar*, 239 F.3d at 673 (footnotes omitted) (internal quotation marks omitted).

$10,000 in statutory damages and $50,000 in additional damages. After review of J&J's documentary evidence and the affidavit of Thomas P. Riley, the Court concludes that an award of $10,000 in statutory damages is reasonable, but that an award of $50,000 in additional damages is too substantial an award to impose against individual defendants under these circumstances.    Instead, the Court will hold the Lloyds liable for $20,000 in additional damages.[7]  *See J&J Sports Prods., Inc. v. Gomez*, No. H-10-871, 2010 WL 3154829, at *2 (S.D. Tex. Aug. 9, 2010) (awarding $10,000 in statutory damages and $50,000 in additional damages in a case involving similar facts); *Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (awarding additional damages in the amount of three times the amount of statutory damages).

The Court also concludes that J&J is entitled to reasonable attorneys' fees.  *See* 47 U.S.C.A. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). As J&J points out, this Court has considered it reasonable in anti-piracy cases to award attorneys' fees in the amount of one-third of

---

[7]   J&J contends, and the Court agrees, that it would be difficult to determine the actual damages that J&J sustained as a result of the Lloyds' unlawful exhibition of the Event.   Whenever an unauthorized establishment exhibits a closed-circuit program, companies like J&J not only miss out on licensing fees, but also sustain more indirect forms of damages.   This includes "los[ing] as customers legitimate commercial establishments[,] which are unwilling and financially unable to compete with those unauthorized commercial establishments."  (App. 8.)

the total damages recovery. *See, e.g, Entm't by J&J, Inc. v. Nuno*, No. 3:01-CV-0631-H, 2001 WL 896941, at *1 (N.D. Tex. Aug. 1, 2001) (Sanders, J.).  Consistent with those cases, and after review of the affidavit of David M. Diaz and the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989), the Court concludes that J&J should recover attorneys' fees in the amount of one-third of the damages recovery in this case.  Further, in the event that the Lloyds file any unsuccessful post-judgment motions or institute any unsuccessful appellate proceedings that require additional legal work by J&J's counsel, J&J should recover fees for that work as well.

Finally, the Court concludes that J&J is entitled to injunctive relief.  Pursuant to § 605(e)(3)(B)(i), the Court "may grant temporary and final injunctions on such terms as it may deem reasonable."  47 U.S.C.A. § 605(e)(3)(B)(i).  In the Court's view, given the Lloyds' actions in this case, it is appropriate to enjoin them from future unlawful interceptions of J&J's satellite transmissions.

III.  Conclusion

Therefore, in view of the foregoing, the Court GRANTS J&J's motion for default judgment.  The Lloyds are hereby ENJOINED, absent prior authorization from J&J, from intercepting the

transmission of any closed-circuit program with respect to which J&J possesses the rights to sublicense and exhibit. In addition, J&J shall recover $10,000 in statutory damages; $20,000 in additional damages for willful violations of § 605; and $10,000 in attorneys' fees. Post-judgment interest shall accrue on these amounts at a rate of .12% per annum. *See* 28 U.S.C.A. § 1961(a) (West 2011).

In addition, the Court enters this conditional award of attorneys' fees:

(1)  J&J shall recover an additional $10,000 in the event that the Lloyds file any unsuccessful post-trial motions.

(2)  J&J shall recover an additional $15,000 in the event that the Lloyds file an unsuccessful appeal to the United States Court of Appeals for the Fifth Circuit.

(3)  J&J shall recover an additional $5,000 in the event that the Lloyds file a petition for writ of certiorari to the United States Supreme Court if the petition is denied or if the resultant proceedings do not lead to reversal of at least a portion of the judgment entered by this Court.

(4)  J&J shall recover an additional $10,000 in the event that it files a petition for writ of certiorari to the United States Supreme Court if the writ is granted and if the subsequent proceedings result in the complete restoration of the judgment entered by this Court.

(5)  J&J shall recover an additional $2,500 for the collection of the judgment entered in this case, should J&J obtain a writ of execution, writ of garnishment, writ of attachment, or other similar method of collection.

SIGNED October 28, 2011.

Terry R. Means

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE